**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**VITTORIO FERGUSON and ALFONSO DAVIS,**

                              **Plaintiffs,**

                    v.                                  **5:04-CV-1181**
                                                        **(FJS/GHL)**

**NEW VENTURE GEAR, INC.; DAIMLER CHRYSLER CORPORATION; Scott Stanton, as President of UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL 624; and Ron Gettelfinger, as President of the INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,**

                              **Defendants.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**VITTORIO FERGUSON**
Syracuse, New York 13206
Plaintiff *pro se*

**ALFONSO DAVIS**
Syracuse, New York 13224
Plaintiff *pro se*

**HANCOCK & ESTABROOK LLP**          **JOHN T. MCCANN, ESQ.**
1500 AXA Tower I                           **LINDSEY H. HAZELTON, ESQ.**
Syracuse, New York 13221
Attorneys for Defendants New Venture
Gear, Inc. and Daimler Chrysler
Corporation

**BLITMAN & KING, LLP**  **KENNETH L. WAGNER, ESQ.**
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204-1415
Attorneys for the Union Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs allege racial employment discrimination and retaliation claims pursuant to Title VII, 42 U.S.C. § 1981, and New York Executive Law § 296 *et seq.* ("Human Rights Law") against Defendants New Venture Gear, Inc. ("NVG"); Daimler Chrysler Corporation ("DC") (collectively "Corporate Defendants"); United Automobile Aerospace and Agricultural Implement Workers of America Local 624 ("Local Union"); and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("International Union") (collectively "Union Defendants").

Currently before the Court are the Corporate Defendants' motion for summary judgment and the Union Defendants' motion for summary judgment. The Corporate Defendants argue that they are entitled to summary judgment for the following reasons: (1) Defendant DC was not Plaintiffs' employer; (2) the Court lacks subject matter jurisdiction over the state-law claims; (3) Defendant DC does not share an identity of interest with Defendant NVG to satisfy the administrative complaint requirements; and (4) Plaintiffs' retaliation claims fail as a matter of law because Plaintiffs did not engage in protected activity, have not established a causal connection between any protected activity and the adverse action, and Defendant NVG had legitimate business reasons for its actions.

The Union Defendants assert that they are entitled to summary judgment for the following reasons: (1) Defendant International Union was not involved in any of the alleged conduct; (2) the Court lacks subject matter jurisdiction over the state-law claims; (3) Plaintiffs' discrimination claims fail as a matter of law; and (4) Plaintiffs' retaliation claims fail as a matter of law.

## II. BACKGROUND

Plaintiffs are African-Americans who were employees in Department 660 at Defendant NVG's plant in 2003. On October 8, 2003, Plaintiff reported to Defendant NVG's management and Defendant Local Union that three white employees, outside the presence of Plaintiffs, had made racial comments or a joke[1] at work on September 27, 2003. Defendant NVG disciplined the three white employees for contributing to a hostile work environment in violation of its "zero tolerance" policy. Additionally, Defendant NVG disciplined former plaintiff Jill Leet, who was present for the conversation, for not reporting the incident to management or to the union but, instead, spreading it by telling her co-workers.

Defendant NVG subsequently disciplined Plaintiffs for contributing to a hostile work environment by allegedly taunting one or more of the three white employees as they left the plant to serve their disciplinary suspension. Upon Plaintiffs' return to work after their discipline, Defendant NVG reassigned them to other departments.

---

[1] Defendants generally characterize the comments as an inappropriate joke, and Plaintiffs characterize the comments as hostile, derogatory, and threatening.

**III. DISCUSSION**

A.  **Standard of review**

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).  First, the moving party must demonstrate the absence of a genuine issue of material fact; then, the opposing party must present evidence, beyond the pleadings, to satisfy every element of the claim and to show a genuine issue for trial. *See id.*  When analyzing a motion for summary judgment, the court must resolve all ambiguities and draw all permissible inferences in favor of the opposing party. *See id.* (citation omitted).

B.  **Plaintiffs' claims against Defendant DC**

Defendant DC argues that it was not Plaintiffs' employer for the purposes of Title VII or § 1981.  Defendant DC asserts that, although in some instances the single-employer doctrine could allow liability, Plaintiffs have failed to produce the evidence needed to invoke that doctrine.  Furthermore, Defendant DC notes that, with respect to Plaintiff's Title VII claim, Plaintiff did not file an EEOC charge naming Defendant DC and cannot show an identity of interest between Defendant DC and Defendants whom Plaintiffs did name in their EEOC charge sufficient to sustain a Title VII claim.

To the contrary, Plaintiffs assert that Defendant DC and Defendant NVG are so interrelated that they operated as one company.  To support this position, Plaintiffs note the following: (1) the labor agreement is between Defendant DC and Defendant International Union and (2) they have Defendant DC employee numbers and various paperwork they have received

has Defendant DC on it.

Corporations may organize to isolate liability among separate entities under the doctrine of limited liability. *See Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 402 (S.D.N.Y. 1999) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (citation omitted)). Only in extraordinary circumstances will a corporation be liable for the acts of a related, but separate, entity; this exception is the single employer doctrine that applies "where there is '"sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."'" *Id.* (quotation omitted).

The Second Circuit has adopted a four-part test to determine the degree of interrelationship between entities. *See id.* (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). "Under that test, a 'parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" *Id.* (quotation omitted). "A plaintiff 'need not show that each factor exists . . . nor is there one factor a plaintiff must show.'" *Id.* (quotation omitted). In this analysis, courts should focus on the second factor and the critical question in the analysis is "'"[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?"'" *Id.* (quotation and other citation omitted).

*1. Interrelation of operations*

Courts in this Circuit use the following criteria to determine the interrelation of operations: (1) the parent's involvement in the subsidiary's daily "'production, distribution, marketing, and advertising'" decisions; (2) the parent's sharing of "'employees, services, records, and equipment'" with the subsidiary; (3) the parent and subsidiary commingling bank accounts, inventories, and lines of credit; (4) the parent's maintenance of subsidiary's books; (5) the parent's issuing subsidiary's paychecks; and (6) the parent's preparing and filing of tax returns for the subsidiary. *Id.* (quotation omitted).

Plaintiffs note that they received an employee badge with a DC identification number, as well as documents from or naming DC, including health insurance cards, employee medical records and other employee benefit information. *See* Affidavit of Vittorio Ferguson dated January 2, 2008, at ¶¶ 5-7; Affidavit of Alfonso Davis dated January 2, 2008, at 5-7. Plaintiffs also assert that their pay stubs had DC's name on them. *See, e.g.,* Deposition of Alfonso Davis dated July 26, 2006, at 132-33.

Defendants explain that Defendant NVG was a joint venture, jointly owned by Chrysler and General Motors, and that Defendant DC was not involved in Defendant NVG's day-to-day operations. *See* Affidavit of Gail Jewell dated October 23, 2007 ("Jewell Aff."), at ¶ 12. Further, Defendant NVG was independently operated, did not share management personnel with Defendant DC, maintained separate bank accounts, accounts receivable, inventories, credit lines, and separate books, and filed its own tax returns. *See* Affidavit of Julie Kozlowski dated October 17, 2007, at ¶¶ 3-4. With regard to their pay stubs, Plaintiffs have not submitted any pay stubs indicating that their compensation came from Defendant DC, and Defendant DC's Senior

Manager affirmed that "Chrysler did not provide compensation to Plaintiffs." *See* Affidavit of Dagmar Klimek dated October 18, 2007 ("Klimek Aff."), at ¶ 5.

Reviewing all of the evidence that the parties presented with regard to this factor, the Court finds that this factor weighs against finding that Defendant DC was Plaintiffs' employer.

### *2. Control of labor relations*

With regard to control over labor relations, the relevant factors include (1) "whether the subsidiary has a separate human resource department;" (2) independent decision making on hiring, discipline, and termination of its employees; (3) who receives employment applications; (4) whether the parent approves personnel status reports; (5) "whether the subsidiary must clear all major employment decisions with the parent;" and (6) "whether the parent routinely shifts employees between the two companies." *Meng*, 73 F. Supp. 2d at 403 (citations omitted).

Plaintiffs' only evidence regarding this factor is the labor agreement between Defendant International Union and Defendant DC. However, when the joint venture of Defendant NVG was formed, Defendant International Union and Defendant DC agreed that Defendant NVG's employees would remain under Defendant International Union and the national collective bargaining agreement to preserve benefits subject to limitations in a local agreement for the East Syracuse plant of Defendant NVG that governs the working conditions at that location and items specific to local employees. *See* Klimek Aff. at ¶¶ 3-4. Furthermore, Mr. Klimek affirms that Plaintiffs are not employees of Defendant DC and that Defendant NVG had its own human resource department that handled assignments, discipline, reviews, and other personnel matters. *See id.* at ¶ 5. Furthermore, Defendant DC had no authority to discipline and no input in any

employment decisions. *See id.*; *see also* Jewell Aff. at ¶ 13 (stating that Defendant DC was not involved in human resource decisions at Defendant NVG).

Reviewing all of the evidence regarding this factor, the Court finds that Plaintiffs have not produced anything to show that Defendant DC was their employer; and, thus, this factor weighs against such a finding.

### 3. Common management and common ownership

"[C]ourts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Meng*, 73 F. Supp. 2d at 403 (quotation omitted). Since the Court has found that the other factors weigh against a finding that Defendant DC was Plaintiffs' employer and these two factors, standing alone, cannot support such a finding, the Court concludes that, as a matter of law, Defendant DC was not Plaintiffs' employer.[2]

**C.      Plaintiffs' claims against Defendant International Union**

Defendant International Union asserts that it is not a proper party to this action because it

---

[2] Under New York Executive Law, "[a]n employee may have more than one employer . . . where: (1) the proposed employer has the power of selection and engagement over the employee, (2) the proposed employer made the payment of salary or wages to the employee, (3) the proposed employer had the power of dismissal over the employee, and [4] the proposed employer had the power to control the employee's conduct." *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 600 (E.D.N.Y. 1995) (noting that the control of conduct and the incidents of employment are the most important factors) (citation omitted). These are the same factors that the Court has discussed with regard to Plaintiffs' federal claims. Accordingly, the Court concludes, for the above-stated reasons, that Plaintiffs have failed to establish that Defendant DC was their employer for purposes of their state-law claims.

-8-

played no role in the handling or disposition of Plaintiffs' grievances. Furthermore, Defendant International Union states that the Court should dismiss Plaintiffs' Title VII claim against it because Plaintiffs did not name Defendant International Union in their administrative complaints to the EEOC.

In response, Plaintiffs argue that Defendant International Union is a proper party because, even though they made Neil Falcone, a representative of Defendant International Union, aware of Defendant Local Union's president's actions, Defendant International Union chose not to intervene. Plaintiffs further contend that Defendant International Union was aware of the discrimination and ratified it by refusing to get involved. Finally, Plaintiffs assert that the Union Defendants have a close enough relationship with Defendant Local Union that their EEOC charges against Defendant Local Union put Defendant International Union on notice of their claims.

"'Common law agency principles govern an international union's liability for actions of its local chapters or their officers.'" *Gallagher v. Int'l Bhd. of Elec. Workers*, 127 F. Supp. 2d 139, 144 (N.D.N.Y. 2000) (quoting *Rodonich v. House Wreckers Union, Local 95*, 817 F.2d 967, 972-73 (2d Cir. 1987)). However, an international union, even with knowledge of unlawful acts of a local chapter, is not under an independent duty to intervene in local union affairs. *See id.* (citing *Phelan v. Local 305, United Association of Journeymen*, 973 F.2d 1050, 1061 (2d Cir. 1992), *cert denied*, 50 U.S. 972, 113 S. Ct. 1415, 122 L. Ed. 2d 785 (1993) (citation omitted)). Therefore, international unions are only liable for participating or acquiescing in allege discrimination by one of their local unions "if, having knowledge of the material facts involved, they evidence an intention to ratify the schemes." *Id.* (citation omitted).

Although Plaintiffs have presented evidence that they made Neil Falcone aware of the situation and grievances in this case, Plaintiffs have presented no evidence nor have they alleged any control, authorization, or ratification on the part of Defendant International Union other than its decision not to involve itself in local affairs.  Since knowledge of unlawful acts is insufficient to trigger a duty to intervene and Plaintiffs have presented no evidence of ratification, the Court finds that Defendant International Union is entitled to summary judgment with respect to all of Plaintiffs' federal and state-law claims.

### D.     Plaintiffs' state-law claims against Defendants NVG and Local Union

Defendants assert that New York Executive Law § 297 allows a party to file a court action unless it files a complaint before a local commission on human rights.  Plaintiffs filed complaints with the New York Division of Human Rights, which made findings of no probable cause and dismissed the complaints.

Plaintiffs contend that the Division of Human Rights only met with Defendants and, therefore, did not evaluate their complaints fairly.  Plaintiffs further assert that, because the Division of Human Rights failed to follow proper procedure, they did not receive a full review on the merits of their complaints that would preclude their state-law claims.

Once a party brings a claim before the New York Division of Human Rights, pursuant to New York Executive law § 297(7), it "may not . . . [bring that claim] again as a plenary action in another court." *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) (citation omitted).  Moreover, "once a plaintiff brings a case before the [Division of Human Rights], [the plaintiff] may appeal only to the Supreme Court of the State of New York." *Id.*  (citing N.Y.

Exec. Law § 298). An exception to this rule is where the Division of Human Rights "dismisse[s] [the claim] 'on the grounds of administrative convenience.'" *Gallagher*, 127 F. Supp. 2d at 144.

Plaintiffs brought these same claims against Defendant NVG before the Division of Human Rights, which dismissed them on findings of "no probable cause." *See* Jewell Aff. at ¶ 11 & Exhibits "8"-"11." Plaintiffs also brought claims against Defendant Local Union before the Division of Human Rights, which were also dismissed for "no probable cause." *See* Affidavit of Kenneth L. Wagner dated October 24, 2007, at ¶¶ 2-5 & Exhibits "I," "J," "K," "L." All of the dismissals contained notices to Plaintiffs of their appellate rights with respect to the decisions. *See, e.g.,* Jewell Aff., Exhibit "10" at 3. Plaintiffs could have raised their arguments regarding the Division of Human Rights' procedure in a state-court appeal.

Since the Division of Human Rights did not dismiss Plaintiffs' claims for administrative convenience and the election-of-remedies statute prohibits Plaintiffs from relitigating their state-law claims against Defendants NVG and Local Union in this action, the Court dismisses these claims.

**E.    Plaintiffs' retaliation claims under Title VII and § 1981 against Defendant NVG**

To present a *prima facie* showing of retaliation under Title VII,

> a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find [1] that[] he engaged in protected participation or opposition under Title VII [], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006)

(quotation and other citations omitted).[3]

Protected activity is "action taken to . . . oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citations omitted). To establish protected activity, "a plaintiff need only prove that she was acting under a good faith belief that the activity was of the kind covered by the statute." *Cosgrove v. Sears Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) (citation omitted). However, "[m]ere subjective good faith belief is insufficient, the belief must be reasonable and characterized by *objective* good faith." *Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (citing *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

Plaintiffs' only assertion of protected activity is their complaint to the union and management about the September 27, 2003 comments that the white employees made. Although the record contains various versions of those comments, the inappropriate comments were in essence a complaint that Martin Luther King Jr. Day – and not Columbus Day – was a paid holiday and a statement that if five more black people or the Jackson Five were killed the employees would receive another five vacation days.

"In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the condition of the victim's employment."'" *Cruz*, 202 F.3d at 570 (quotation omitted). Since isolated instances of harassment are ordinarily insufficient, a plaintiff must show either an

---

[3] The elements of a retaliation claim under § 1981 are the same as those under Title VII. *See Tait v. Chem. Bank*, 839 F.2d 775, 777 (2d Cir. 1988) (citation omitted).

extraordinarily severe incident or "'sufficiently continuous and concerted'" incidents to alter the plaintiff's work conditions.  *Id.* (quotation omitted).  Plaintiffs have not argued that this one incident constituted a hostile work environment claim, nor could they have shown a workplace permeated with discrimination based on this one incident.  Therefore, the Court finds that the issue is whether Plaintiffs had an objectively reasonable good faith belief that the conditions at the plant about which they complained constituted a hostile work environment.

In *Jordan v. Alternative Res. Corp.*, 458 F.3d 332 (4th Cir. 2006), the court was faced with a similar situation.  The plaintiff in *Jordan* overheard a co-worker's racist comment to the television following a report of the capture of John Allen Muhammad and Lee Boyd Malvo, the D.C. Snipers who shot thirteen people in public places in the Washington, D.C. area over a period of three weeks.  *See id.* at 337.  The Fourth Circuit concluded that, "[a]lthough [the plaintiff] could reasonably have concluded that only a racist would resort to such crudity even in times when emotions run high, the mere fact that one's *coworker* has revealed himself to be racist is not enough to support an objectively reasonable conclusion that the *workplace* has likewise become racist."  *Id.* at 341.

Although the situation in *Jordan* is somewhat distinguishable from the situation present in this case, the Court finds the Fourth Circuit's reasoning persuasive.  No objectively reasonable person could have believed that Defendant NVG's plant was in the grip of a hostile work environment infected by severe or pervasive racism based on the September 27, 2003 comments of three of Plaintiffs' white co-workers.  Accordingly, the Court finds that Plaintiffs have failed to establish that they engaged in protected activity and, therefore, grants Defendant NVG's motion

for summary judgment with respect to Plaintiffs' Title VII and § 1981 retaliation claims.[4]

**F.     Plaintiffs' Title VII and § 1981 discrimination claims against Defendant Local Union**

To establish their Title VII and § 1981 discrimination claims against Defendant Local Union, Plaintiffs must show that Defendant Local Union breached the duty of fair representation. *See Smith v. New Venture Gear, Inc.*, No. 99-CV-2086, 2007 WL 22948945, *20 (N.D.N.Y. Sept. 30, 2007), *aff'd*, 319 Fed. Appx. 52, 2009 WL 910213 (2d Cir. Apr. 6, 2009) (summary order) (citing *Nweke v. Prudential Ins. Co. of America*, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998)).  A union must fairly represent its members in grievances against an employer, *see* 29 U.S.C. § 158(b), i.e., a union has the duty "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (citation omitted).  Breach of this duty occurs where the "'union's conduct . . . is arbitrary, discriminatory, or in bad faith,'" *United Steelworkers of Am. AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990) (quotation omitted), or when the union "'causes an employer to discriminate against employees . . .,'" *Ramey v. Dist. 151, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004) (quotation omitted).

Plaintiffs take issue with the following decisions of Defendant Local Union: (1) its decision to agree to Plaintiffs' transfers to different departments; (2) its decision to withdraw the grievances protesting the transfers; and (3) its decision to withdraw the grievances protesting

---

[4] For the same reasons, the Court grants Defendant Local Union's motion for summary judgment with respect to Plaintiffs' Title VII and § 1981 retaliation claims.

Plaintiffs' punishment for allegedly taunting their white co-workers.

With respect to Plaintiffs' transfers to other departments, Defendant Local Union has produced evidence that it agreed to those transfers after both Plaintiffs raised personal safety concerns. *See* Complaint at ¶¶ 8(vi)-(vii); Affidavit of Harry S. Stanton dated October 11, 2007 ("Stanton Aff."), at ¶¶ 11-12. Based on this uncontroverted evidence, the Court finds that Defendant Local Union acted in good faith and not arbitrarily when it agreed to Plaintiffs' transfers.

With respect to grievance nos. 385-03 and 422-03, which addressed Plaintiffs' transfers, Defendant Local Union has produced evidence that it withdrew those grievances because it felt that it had no basis to object because it had already agreed to the transfers. *See* Stanton Aff. at ¶ 16. Based on this evidence, the Court finds that Defendant Local Union acted in good faith and not arbitrarily in withdrawing these grievances.

Defendant Local Union's Executive Committee withdrew Plaintiff Davis' grievance no 384-03 challenging his thirty-day disciplinary layoff at the third step. Defendant Local Union has presented evidence that there were several witnesses to Plaintiff Davis' conduct which it believed to be true and that Defendant NVG agreed to reduce the discipline to a fifteen-day disciplinary layoff that moved Plaintiff Davis one step back in the progressive discipline system. *See* Stanton Aff. at ¶ 18. Defendant Local Union has stated that it found this to be a valuable settlement that protected Plaintiff Davis' continued employment. *See id.*

Although Plaintiffs have presented evidence of other co-workers who stated that they did not observe the taunting and have alleged that the witnesses contrived the taunting story in retaliation for Plaintiffs' reporting of the September 27, 2003 comments, Plaintiffs have not

produced any evidence, other than conclusory assertions, that Defendant Local Union did not fairly investigate or acted arbitrarily or in bad faith.

Although there may be conflicting observations about what occurred, a union may rely on a good faith investigation of the merits of a grievance to satisfy the duty of fair representation. *See Barber v. Xerox Corp.*, No. 5:04-CV-82, 2006 U.S. Dist. LEXIS 34034, *13 (N.D.N.Y. May 26, 2006) (quotation omitted). In this case, Defendant Local Union investigated the incident and there is nothing in the record to indicate that Defendant Local Union did not undertake its investigation in good faith. Therefore, the Court concludes that Defendant Local Union did not breach its duty of fair representation with regard to this grievance.

Local Union Committeeman Vincent Pagano withdrew Plaintiff Ferguson's grievance no. 383-03 challenging a ten-day disciplinary layoff at the second step because Mr. Pagano believed that the allegations of taunting were true. Mr. Pagano argued and attempted to have the discipline reduced but withdrew the grievance believing that it was without merit and not winnable at arbitration. *See* Affidavit of Vincent Pagano dated October 15, 2007, at ¶ 4. Plaintiffs have not produced any evidence to indicate arbitrary, discriminatory, or bad-faith decision-making. Therefore, the Court finds that Defendant Local Union did not breach its duty of fair representation with regard to this grievance.

Plaintiffs also raise a number of comments and actions of President Stanton[5] regarding his handling of their grievances. *See* Plaintiffs' Memorandum of Law at 10. The Court finds that none of these comments raise a genuine issue of material fact, given the evidence that Defendant

---

[5] President Stanton denies that he made these comments and further states that his actions at Plaintiff Davis' appeal to the union followed this standard procedure. *See* Reply Affidavit of Harry S. Stanton dated January 16, 2008, at ¶¶ 2-16.

Local Union produced and that Defendant Local Union handled Plaintiffs' grievances in good faith and not in a discriminatory manner.

Plaintiffs also assert that Defendant Local Union continued to pursue the grievances of the white employees being disciplined for the September 27, 2003 comments after it withdrew their grievances. However, Plaintiffs have failed to produce any evidence to show any similarity between their grievances and those of the white employees that would allow a comparison of those grievances or that would raise an inference of disparate treatment.

Finally, Plaintiffs assert that Plaintiff Davis receiving less pay and being placed in a machinery area with jobs that violated his medical restrictions demonstrates bad faith. Defendant Local Union has produced evidence that, when it agreed to the transfers, which resulted in the decision to withdraw the grievances, it did not know where Defendant NVG intended to reassign Plaintiffs. *See* Stanton Aff. at ¶¶ 11, 13 16. Since Defendant Local Union had no knowledge of the facts about which Plaintiffs complain at the time it made its decision, the Court finds that the subsequent conditions of Plaintiffs' transfers do not evidence bad faith.

In sum, Plaintiffs' discrimination claims against Defendant Local Union constitute nothing more than their dissatisfaction with the outcome of their grievances. However, such dissatisfaction, standing alone, does not give rise to an inference of discrimination. *See Dimitropoulos v. Painters Union Dist. Council 9*, 893 F. Supp. 297, 299 (S.D.N.Y. 1995) (citation omitted). Since Defendant Local Union has demonstrated that it investigated and acted in good faith in the handling of Plaintiffs' transfers and grievances and Plaintiffs have failed to

adduce evidence from which a reasonable trier of fact could find in their favor, the Court grants Defendant Local Union's motion for summary judgment with respect to Plaintiffs' Title VII and § 1981 discrimination claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions for summary judgment are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: August 31, 2009
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge